Good morning. May it please the court. Joe Sigonza for Petitioner and in this immigration appeal today. Can you, that's I think a directional mic, so can you speak right into it? Certainly. Yeah, okay, thank you. In this immigration appeal today there are two issues. Number one, whether substantial evidence supports the IJ's adverse credibility finding with respect to petitioner's claim for discretion in denying petitioner's motion to reopen for collateral relief, specifically adjustment of status based on his marriage to a U.S. citizen spouse. If I may address the motion to reopen first. Petitioner would submit that the board abused its discretion in failing to remand this case to the immigration court for adjudication, solely because for the first time on appeal, petitioner raised the issue of his true identity versus his, quote, adopted name in asylum proceedings. In the motion to reopen declaration, petitioner specifically mentioned that his true name is Gurjeet Singh and that on passport he lawfully entered the United States. And it's significant to note that that passport has not been challenged as not being authentic. Do we know, in fact, even now, what your client's real name is? No, Your Honor, and the gist of my argument with respect to the motion to remand is that the board, simply because for the first time on appeal he raised an issue as to his true identity, failed to remand to the I.G.A. to sort through all these identity-related issues. What difference does it make if he didn't tell the truth about who he was? Well, that goes to the asylum argument also, Your Honor. Whether or not he is Gurjeet Singh or Harmeet Singh Kamba doesn't change the fact that we claim that we submit he suffered persecution. And the I.G.A. in her decision, in fact, conceded as much. If she had found Petitioner credible, she had no problem finding that he suffered past persecution based on what he related were his problems in India. So in that respect, Your Honor, yes, it does not make any difference whether or not he is, in fact, Gurjeet Singh or Harmeet Singh Kamba. He suffered past persecution. With respect to the I-601 waiver. His brother did. Go ahead, sir. Thank you. With respect to the I-601 waiver, we would submit that that was submitted that was attached as part of the motion to reopen simply primarily because of these identity issues that arose for the first time on appeal. And that's significant to note. The identity issue arose for the first time on appeal. And as the Board cannot engage in fact-finding, we would submit that the Board should have, rather than summarily dismissing the motion to reopen out of hand, remand to the I.G.A. for consideration not only of the identity issue, if, in fact, it was relevant to the underlying asylum claim, but also to his claim for collateral relief. The Bail – the Board, rather, admitted as much in its decision that they didn't even engage in a Velarde assessment. They just summarily dismissed his motion to reopen, quote, out of an exercise of discretion, which we would submit is an abuse of discretion. Well, you're asking us to assume that he's credible when there was a finding that he was not credible on the basis of inconsistencies and statements that were not true that we now know were not true. Well, Your Honor, with that respect – in that respect, rather, we would submit that these – whatever the I.G.A. found as inconsistencies were, in fact, minor – didn't go to the heart of the claim, didn't go to the fact that he was persecuted in this pre-Real ID Act case. Her concern was real. Well, who he was does. I'm sorry? Who he was. Well, I believe she wasn't – she didn't specifically mention, if I recall correctly in her decision, that she had concern about who he was as opposed to the composition of his family because of the individual. Right. And nothing jived. Yes. So I don't think that she had a concern at that time that whether or not he was – in fact, who he claimed he was, Harmit Singh Kamba. She had concerns about that ration card, which a lot of testimony was devoted. We would submit that he had given plausible testimony as to whether or not that card was renewed or reissued and why he didn't bring that up at the first hearing as opposed to the second hearing. We would submit that he did give plausible testimony to explain that ration card and when it was issued and addressed all the judge's concerns. I think the other concerns that the judge had about his credibility went to the fact that his father's affidavit did not mention his brother, his activities, his death. And what's the credible explanation for that? Petitioner plausibly testified that he, in fact, had specifically told his dad, don't mention my brother, just talk about me, for whatever reason. That wasn't explored on – it wasn't further explored on the record. I believe the other concern that D.I.J. had was whether the letter from the Federation, which is admittedly more often a form letter, whether that the letter did not address specifically the petitioner's arrest or his brother's affiliation with the Federation and his arrest and subsequent death. We would submit that as collateral incidental to his claim. Again, it's more often a form letter from the Federation rather than a letter specifically addressing an individual petitioner. Assuming we agree with you that there was not substantial evidence supporting the adverse credibility finding, this is cases in a unique posture now, and I'm just wondering what your view is on whether or not we can take into account all of the new evidence that seems to expose Mr. Comba as someone who was not telling the truth New evidence, Your Honor, with respect to the motion to reopen? All that came out, all that's come out since. I would submit that if it – that that evidence is relevant to D.I.J. to sort through any identity issues that she feels might significantly affect his claim for asylum. We don't think it does. But I would proffer that that evidence in addition to the on remand from the board. Again, the board failed to give an analysis of lawyerly factors. They didn't evaluate the hardship. They most – they appeared to just summarily dismiss the I-601, and that's what the I-601 waiver is there for. If there were any, quote, misrepresentations or inaccurate information or omissions at the lower level, at the asylum level before D.I.J., the I-601 is proffered as part of the motion to reopen to address those issues. And we would submit that remand as appropriate. Did you want to reserve the rest of your time? Yes. Okay. Thank you. Good morning, Your Honors. Good morning. My name is John McAllen. I represent the appellant, the Attorney General. May it please the Court. The two questions before the Court are who is the petitioner and how did he get into the United States? Is he Harmeet Singh Kamba, who, with the help of an agent, traveled – the securitist who already traveled through Thailand, Guatemala, Germany, Mexico, and then on the 8th of May crossed into the United States illegally and applied for asylum? Or is he Gurjeet Singh, who obtained a visitor visa in India, traveled to Chicago, on the 8th of May, 1994, illegally entered the United States as a visitor and seeks to adjust status based on marriage to a U.S. citizen? The substantial evidence standard is supported in this case based upon, or as it pertains to the asylum claim, the immigration judge reviewed the record and found that the petitioner was Harmeet Singh Kamba. The petitioner's claim to be Harmeet Singh Kamba, who was a U.S. citizen, was a very political opinion based upon the relationship to his brother, Resh Paul, and Resh Paul's activities. The ration booklet, the affidavit from his father, and the letter from the A.S.S.F. were used to establish the identity and the relationship to the petitioner. And the immigration judge, as explained in her opinion, discussed how the ration booklet, the two exhibits, were incomplete and how the petitioner admitted that the booklet had been prepared for his asylum claim. Based upon the admitted ---- Sotomayor, in your briefing, I'm just curious, what ---- can you tell me why the ration card goes to the heart of the claim? It seems to ---- that may be viewed as a relatively minor fact. It's a position that the ration card was used to establish the relationship between the petitioner and Resh Paul because it identified the family. The petitioner had testified that the All Sikh Student Federation meetings, some were held at the family home, that Resh Paul hosted the meetings. So the ration card would be used to establish that his claim of an imputed political opinion from the government was through his brother, Resh Paul, and how the ration card would list the family members. The immigration judge, as she said in her opinion or decision, there was a lot of discussion about the ration card, and ultimately the petitioner came forward in the case and misrepresented his position with the ration card about what had happened to it and about it being reissued or issued. But the immigration judge, again, in relying on using the card for identity and relationship, found that the petitioner's credibility was not credible and used that for the basis of the adverse credibility determination. Well, let me sort of, I guess, explore with you the same thing that I asked your opposing counsel. It seems like the evidence that's come out since then shows some critical facts about Mr. Kamba's truthfulness or lack thereof. And during the asylum testimony, do we consider that or is there a way to consider that when trying to evaluate his credibility or what we have to review at this time? The record – I'm sorry, Your Honor. The petitions have been consolidated. One could argue that the record has been consolidated. And looking at below, the burden was on the petitioner to establish his identity in presenting his claim, and then to present a credible claim, looking at the record both on each individual portion, the asylum and the motion for reopening, and consolidated, the court can come to the same conclusion that the adverse credibility determination is supported. If the petitioner were to come up, as he admitted, and say, I'm not Hardimit Singh Kamba, but I'm Gurjeet, then that opens up the question of what's left? What are the net facts in his claim? And looking at the record completely, the decision or the conclusion of the court can be that the petitioner was not credible. With regard to the motion to reopen, in his motion to reopen, the claim by the petitioner his new evidence, his material evidence, evidence not discoverable prior to the hearing was his name and his birth date. And he admitted that he falsified both in his asylum claim. But he did more than that. As we look at the asylum claim in terms of what's left in the motion to reopen, he admitted that shortly after his brother's death, he married his sister-in-law and then went to the Gurdwara, met the agent, came to the United States, and entered illegally. So we have the net facts of who is he and how is this marriage to this first woman named Karanjit Kaur affect his ability to adjust to his current wife, second woman named Karanjit Kaur. In addition, what the petitioner also abandons in his motion to reopen is a number of documentary evidence. His birth certificate, which he presented with his asylum claim, has the name Harmeet Singh Kaur and the birth date of 12 December 1972, as opposed to who he claims he is now, Gurdjit Singh, with the birth date of November 20, 1971. In addition, his school matriculation documents, his driver's license, are facts that are no longer net facts based upon that. So the board had in the motion to reopen the admission by the petitioner that he misrepresented who he is. And as this Court held in Farra v. Ashcroft, identity is a key element in an asylum claim. And in Kaur v. Gonzalez, a petitioner's failure to correct a mistake like that is an indicator of dishonesty and would support both the adverse credibility determination by the immigration judge and the board's decision on denial of the motion to reopen. So based on this record, knowing that identity is key and credibility is key, the petitioner has not satisfied either element. No evidence would compel a reasonable factfinder to believe that he can be both Harmeet Singh Kamba and Gurdjit Singh with two different dates of birth and two different manners of entry. So we remanded this case 8 years ago. Yes, Your Honor. And because of concerns about whether or not there was a proper credibility determination, and there was an adverse credibility determination. And then there's a petition for reopen which says, well, it's true that I said everything false before, but now I'm coming clean and telling you who I really am. And the board, in its discretion, denied that. And now we're back again to consider both the original, the decision on the original remand and the denial of the petition to reopen. Is that how this works? Yes, Your Honor. Okay. So based upon the record, substantial evidence exists to support the immigration judge's adverse credibility determination. And further, the board did not abuse its discretion. It considered the record evidence properly and determined based upon the petitioner's admissions, misrepresentations and adverse credibility that he did not establish a basis for a reopening. Thank you. Judge McAmey, do you have any questions for this counsel? Not for this counsel. I do for the next counsel, on his next part. Okay. Thank you. Please. Thank you. Thank you, Your Honor. Before I briefly address two matters on rebuttal, if Judge McAmey has any questions, I'd be happy to. Well, I do. Please, thank you. Because even if this were to be remanded, he has had substantial opportunities at every level to present credible evidence. What he has presented is speculative evidence that's saying, if you just give me one more chance, I know I can prove all these things that you're now criticizing me for that I didn't present the first time around. How many times should your client, knowing he has the burden of proof, have to have all these hearings over and over and over again? That's my question. Didn't he really have the opportunity to present all this and didn't? Well, admittedly, Your Honor, this case has been up on appeal three or four times. And let me add that to that. Because even if you remand it, he's still stuck with the facts of misrepresenting on several occasions his identity, misrepresenting all the facts with regard to his spouse. Just as a footnote on a historical matter, there is a very historical case involving someone marrying his brother's widow that led to a lot of historical information, which is not of your making. But the point being, you're still stuck with all those things that would come to the credibility of high impeachment evidence that your client didn't or wasn't truthful and honest, and then keeps trying to explain it away. How do you get away from the fact that someone will ultimately can say he's never he's not been truthful? Well, Your Honor, I would submit that he may bear a heavy burden on remand to explain this additional evidence in light of what he testified to at his original asylum hearing. All he's asking for is a reasonable opportunity based on the fact that he is now married to a U.S. citizen and seeks to adjust his status, and most importantly, because he has proffered an I-601 waiver for the IJ in the first instance to sort through all this. And again, he does have a heavy burden. I would concede he does have a heavy burden, but he should be accorded a reasonable opportunity to meet that burden. Thank you. Thank you. Thank you, Your Honor, for your arguments here today. The case is now submitted. Thank you very much.
judges: McNamee, Schroeder, Murguia